## In re Road in the Borough of Phœnixville.

1. The title of an Act of Assembly must not only embrace the subject of the legislation, but must also express the same so clearly as to give notice of the legislative purpose to those who may be specially interested therein.

2. The special Act of March 18th, 1868 (P. L. 352), entitled "An Act relating to Boroughs in the County of Chester," repealed certain provisions of a general Act, entitled "An Act regulating Boroughs," respecting the proceedings for laying out and opening roads within the boroughs of Chester county, the effect of which was to relieve the property owners in the boroughs from the burden of paying damages for roads opened within the boroughs, and to shift that burden upon the county:

   *Held*, that the title did not clearly express the purpose of the Act, and that the Act was therefore unconstitutional.

3. Blood *v.* Mercelliott, 3 P. F. S., 391, commented on.

February 12th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

CERTIORARI to the Court of Quarter Sessions of *Chester county:* Of January Term, 1883, No. 324.

This was in the court below, a petition by the Burgess and Town Council of the Borough of Phœnixville, in Chester county, for the appointment of a Jury of View to lay out and open a new street or road within the said borough and to vacate a portion of an old street, which would thereupon become useless. The proceeding was instituted under the provisions of the special Act of March 18th, 1868 (P. L. 352), which reads as follows:—

[Road in Phœnixville.]

"An Act Relating to Boroughs in the County of Chester."

"Sec. 1. Be it enacted by the Senate and House of Representatives of the Commonwealth of Pennsylvania in general assembly met, and it is hereby enacted by the authority of the same, That an Act of Assembly, approved April twenty-second, one thousand eight hundred and fifty-six, entitled, 'A supplement to the Act regulating Boroughs,' approved April third, one thousand eight hundred and fifty-one, and also the last proviso to the third article of the twenty-seventh section of the Act, entitled, 'An Act Regulating Boroughs,' approved April third, one thousand eight hundred and fifty-one, and the proviso to the fifth article of the said twenty-seventh section of the said last mentioned Act, be and the same are hereby repealed so far as it relates to the boroughs now incorporated or hereafter to be incorporated in the county of Chester; and like proceedings shall be had, for the opening, widening and straightening of the roads, streets, lanes, courts and alleys laid out and ordained in the said boroughs in Chester county, and for the assessment and payment of the damages sustained thereby, as are provided by law for the laying out and opening, and the assessment and payment of damages sustained thereby, of public roads within the said County of Chester outside of said boroughs."

The jury was appointed, whose report was filed in favor of the new road as prayed for, and assessing damages to certain property owners, to be paid by the county of Chester.

The commissioners of Chester county filed exceptions to the report of the jury; among others, the following: 7. That the Act of Assembly of March 18th, 1868, entitled, "An Act relating to Boroughs in the county of Chester," under which the jury acted in assessing said damages, is unconstitutional and void.

The court, after argument, dismissed the exceptions and confirmed the report, and ordered the street to be opened, Futhey, P. J., saying, in the opinion filed, *inter alia*, as follows:—

We do not regard the Act in question as offending against the constitutional provision referred to. It is entitled, "An Act relating to boroughs in the county of Chester," and the provisions repealed thereby are contained in Acts respectively entitled, "An Act regulating boroughs," passed April 3d, 1851, and "A supplement to an Act regulating boroughs, approved April 3d, 1851," passed April 22d, 1856.

The provisions repealed being contained in Acts bearing these general titles, the repeal was properly contained in an Act bearing the same general title. The title, although general in its terms, is not misleading in its character. Those

interested were only aware of the provisions repealed, by reason of their being contained in Acts simply "regulating boroughs," and an Act bearing the title of "An Act relating to boroughs in the county of Chester," was sufficient to call the attention of those interested to inquiry as to its provisions.

The legislation in the Act in question is germane to that contained in the original Acts, to which it is virtually a supplement, and where such is the case, the object is sufficiently expressed in the same general title: State Line and Juniata Railroad Co.'s Appeal, 27 P. F. S., 429; Craig *v.* First Presbyterian Church, (7 Norris, 42).

We are of opinion that the subject of the Act is properly contained in an Act bearing the title of that in question. It refers to matters affecting the interests of the boroughs, and the title we deem a sufficient compliance with the constitutional provision.

The commissioners of Chester county thereupon took this certiorari, assigning for error the above action of the court.

The case was first argued on February 11th, 1884, CLARK, J., being absent. On February 25th, 1884, a re-argument was ordered, which was had February 12th, 1885, GREEN, J., being absent.

*Samuel D. Ramsey* and *Thos. S. Butler*, for plaintiffs in error.—The title of the special Act in question is defective, in that it is too general to clearly express the design of the Act, and it is inappropriate in that it does not contain an allusion to the county as the subject which is to be most affected by its provisions. Its real purpose being in relief of the owners of property in the boroughs and detrimental to the county, the title should have been so framed as to indicate that the county was interested therein: Ruth's Appeal, 10 W. N. C., 498; Rader *v.* Township of Union, 39 New Jersey Law R., 509; Dorsey's Appeal, 22 P. F. S., 192; Beckret *v.* City of Allegheny, 4 W. N. C., 530; 4 Norris, 191.

*H. H. Gilkyson*, for defendant in error.—The fact that the practice under this Act has been unquestioned for sixteen years, is persuasive that the Act does not "violate the Constitution clearly, palpably, plainly and in such manner as to preclude doubt or hesitation"—all which must be shown to the satisfaction of this court before it will declare an Act of Assembly unconstitutional. If the title clearly expresses a subject, and the legislation be upon that subject, *or upon matters properly connected with it,* the Act is constitutional. The Act in this case, viewed by that test, is not unconstitutional: Clinton Twp. *v.* Draper, 14 Indiana, 295; Thomasson *v.* The

[Road in Phœnixville.]

State, 15 Indiana, 455; Chiles *v.* Drake, 2 Metcalf's Rep., (Ky.) 150; Commonwealth *v.* Green, 8 P. F. S., 226; Yeager *v.* Weaver, 14 P. F. S., 425; Cooley's Constitutional Limitations, p. 142; Blood *v.* Mercelliott, 3 P. F. S., 391.

Mr. Justice STERRETT delivered the opinion of the court, March 2d, 1885.

It is conceded the validity of the proceedings in the Court of Quarter Sessions depends on the constitutionality of the Act, entitled "An Act relating to Boroughs in the county of Chester," approved March 18th, 1868; P. L. 352. If the Act is constitutional the order complained of should be affirmed; if not, the entire proceedings are erroneous and must be set aside.

The Act in question consists of a single section, repealing the Act of April 22d, 1856, entitled "A supplement to the Act regulating Boroughs, approved April 3d, 1851," and also the last proviso to the 3d article and the proviso to the fifth article of the 27th section of the last mentioned Act, so far as they relate to boroughs then incorporated or thereafter to be incorporated in the county of Chester; and then declaring that "like proceedings shall be had for the opening, widening and straightening of roads, streets, lanes, courts and alleys laid out and ordained in the said boroughs, . . . . . and for the assessment and payment of damages sustained thereby as are provided by law for the laying out and opening, and the assessment and payment of damages sustained thereby, of public roads within the said county, outside of said boroughs."

The first section of the repealed supplement of April 22d, 1856, provided for the appointment of viewers to "assess and allow to all persons injured" by the opening, widening or extension of any street or alley in any of said boroughs, "such damages as they respectively shall have sustained over and above all advantages;" and also, to "make assessments for contribution upon all such properties as shall be benefited by the opening, widening or extension of such streets and alleys, such sums respectively as they may have been benefited over and above all disadvantages." The second section required the viewers to describe in their report, "the respective properties assessed whether for contribution or damages and the amounts thereof respectively," and authorized the court to modify, approve, and confirm said report, etc. P. L. 525.

One of the repealed provisos prohibited the opening, for public use, of any such street, lane or alley until the damages, with interest from date of adjudication, shall be liquidated: the other required that all damages assessed, beyond the

[Road in Phœnixville.]

value of the land appropriated to public use, shall be separately assessed and paid by the borough: P. L. 327.

Bearing in mind that damages incurred in laying out and opening public roads in the county, outside of the boroughs, are payable by the county as provided in the 8th section of the general road law of 1836, it must be very evident that the design and effect of the special Act of 1868, *supra*, was to render the county liable for all damages occasioned by the opening, widening and straightening of roads, streets, &c. in the respective boroughs: in other words, to transfer the burden, whatever it might be, from the benefited property owners in the boroughs to the taxpayers of the county at large.

The contention is that the last mentioned Act, under which the proceedings were had, is void, in that it offends against article XI. sect. 8 of the Constitution of 1838, which declares, "No bill shall be passed by the legislature containing more than one subject which shall be clearly expressed in the title, except appropriation bills:" Purd., 34 p., 8. The design and scope of this constitutional amendment, adopted in 1864, are readily understood when we consider the mischief which it was intended to remedy. Prior to that date the vicious practice had obtained of incorporating in one bill a variety of distinct and independent subjects of legislation. The real purpose of the bill was often and sometimes intentionally disguised by a misleading title or covered by the all comprehensive phrase, "and for other purposes," with which the title of many "*omnibus*" bills concluded. Members of the legislature as well as the general public were thus misled or kept in ignorance as to the true character of proposed legislation. To remedy this great and growing evil the amendment in the first place prohibits the introduction of more than one subject in each bill. In determining the unity of the subject, regard must of course be had to the ultimate object to be attained. Details leading to the accomplishment of that object are cognate to the subject of legislation, and therefore form a part thereof. The Act under consideration is of that character and hence it does not offend against the prohibitory clause of the amendment. But, unity of subject is not enough. The mandatory clause of the amendment imperatively requires that the subject of proposed legislation, whatever it may be, shall be clearly expressed in the title of the bill. As the means of notice to representatives as well as their constituents the latter is quite as essential as the former. We are not called upon, however, to show the necessity or vindicate the wisdom of the constitutional requirement. It is enough for us to know that it is an express mandate of the organic law which the legislature ought to obey and courts are bound to enforce. While

[Road in Phœnixville.]

it may be difficult to formulate a rule by which to determine the extent to which the title of a bill must specialize its object, it may be safely assumed that the title must not only embrace the subject of proposed legislation, but also express the same so clearly and fully as to give notice of the legislative purpose to those who may be specially interested therein. Unless it does this it is useless. While it has been repeatedly said the title of a bill need not be a complete index of its contents, it has never been doubted that the subject of proposed legislation must be so expressed in the title of the bill as to give notice of its purpose to members of the legislature and others specially interested: Com. *v.* Green, 8 P. F. S., 233; Dorsey's Appeal, 22 Id., 192; Beckert *v.* City of Allegheny, 4 Norris, 191. In Dorsey's Appeal, *supra*, it is said: "The purpose of the amendment is to prevent a number of different and unconnected subjects from being gathered into one Act, and thus to prevent unwise or injurious legislation by a combination of interests. Another purpose was to give information to the members or others interested, by the title of the bill, of the contemplated legislation; and thereby to prevent the passage of unknown and alien subjects, which might be coiled up in the folds of the bill. The amendment was found necessary to correct the evils of unwise, improvident and corrupt legislation, and therefore is to receive an interpretation that will effectuate its true purpose. It would not do to require the title to be a complete index to the contents of the bill, for this would make legislation too difficult, and bring it into constant danger of being declared void. But on the other hand the title should be so certain as not to mislead. The language of the amendment is, 'one subject, which shall be clearly expressed in the title.' To be 'clearly expressed' certainly does not mean something which is dubious, and therefore not clearly expressed. If then the title seems to mean one thing while the enactment as clearly refers to another, it cannot be said to be clearly expressed." Speaking of the Act under consideration in Beckert *v.* Allegheny City, *supra*, our brother GORDON says: "If it be true that the purpose of the constitutional amendment is that members of the legislature and all others interested may have notice of the contemplated legislation, in order that such as is secret and unwise may be discussed and prevented, then the Act under consideration certainly comes within its prohibition and is of no effect as to all persons outside of the City of Allegheny."

The only case, seemingly opposed to the views above expressed, is Blood *v.* Mercelliott, 3 P. F. S., 391. The extreme limit of constitutional relaxation reached in that case is not likely to be again attained, and certainly not exceeded.

13 OUTERBRIDGE—4

In view of what has been said we think the Act in question is unconstitutional. While it perhaps conforms to the first clause of the amendment it undoubtedly offends against the second, in that the subject of legislation is not so clearly expressed in the title as to give any notice of the legislative purpose. That purpose, as we have seen, was to transfer the burden of street damages in the several boroughs of the county from the benefited property owners therein, and impose the same on the taxpayers of the county at large. No one reading the title of the Act would for a moment suppose that such was the legislative intention. On the contrary he would without hesitation conclude that the operation of the Act was restricted to boroughs, and that no property owner in the county outside the boroughs would be affected thereby. The title not only fails to give notice of the legislative purpose, but it is actually misleading. The intention of the amendment was to require that the real purpose of a bill should not be disguised or covered by language calculated to mislead.

Conceding that it requires a clear case to justify us in declaring an Act unconstitutional on the ground that it offends against the amendment above quoted, we think the one before us is of that character.

Proceedings reversed and set aside.